JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Rachel Styczynski

**DEFENDANTS**

MarketSource, Inc. and Allegis Group, Inc.

**(b)** County of Residence of First Listed Plaintiff    Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Fulton
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Caren N. Gurmankin, Esq.,
Console Mattiacci Law, LLC
1525 Locust Street, 9th Floor, Phila. PA 19102    215-545-7676

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government Plaintiff

☒ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original Proceeding
☐ 2   Removed from State Court
☐ 3   Remanded from Appellate Court
☐ 4   Reinstated or Reopened
☐ 5   Transferred from Another District *(specify)*
☐ 6   Multidistrict Litigation - Transfer
☐ 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §2000(e), et seq. ("Title VII"), 42 U.S.C. §12101, et seq. ("ADA") and 29 U.S.C. §2601, et seq. ("FMLA")

Brief description of cause:
Plaintiff is alleging sex discrimination, disability discrimination, FMLA violation, and retaliation.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
in excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*  N/A

JUDGE _____ DOCKET NUMBER _____

DATE
06/25/2018

SIGNATURE OF ATTORNEY OF RECORD
*Caren N. Gurmankin, Esquire*

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: Rachel Styczynski, Quakertown, PA 18951

Address of Defendant: MarketSource, Inc., 11700 Great Oaks Way, Suite 500, Alpharetta, GA 30022

Place of Accident, Incident or Transaction: _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 06/25/2018 _____ 205900
  *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.  *Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
   *(Please specify):* _____

**B.  *Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
   *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Caren N. Gurmankin, counsel of record or pro se plaintiff, do hereby certify:

- ☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☐ Relief other than monetary damages is sought.

DATE: 06/25/2018 _____ 205900
  *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Rachel Styczynski | : | CIVIL ACTION |
| v.          Plaintiff, | : | |
| MarketSource, Inc., et al. | : | NO. |
| Defendant. | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.　　　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits　　　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.　( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.　　　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)　　　( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.　　　(X)

| | | |
|---|---|---|
| June 25, 2018 | _Attorney-at-law_ | Plaintiff, Rachel Styczynski |
| **Date** | **Attorney-at-law** | **Attorney for Plaintiff** |
| (215) 545-7676 | (215) 565-2853 | gurmankin@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

|  |  |  |
|---|---|---|
| **RACHEL STYCZYNSKI**<br>Quakertown, PA 18951 | : | **CIVIL ACTION NO.** |
|  | : |  |
| **Plaintiff,** | : |  |
|  | : |  |
| **v.** | : |  |
|  | : |  |
| **MARKETSOURCE, INC.**<br>11700 Great Oaks Way, Suite 500<br>Alpharetta, GA 30022 | : |  |
|  | : | **JURY TRIAL DEMAND** |
|  | : |  |
| **and** | : |  |
|  | : |  |
| **ALLEGIS GROUP, INC.**<br>7301 Parkway Drive<br>Hanover, MD 21076 | : |  |
|  | : |  |
| **Defendants.** | : |  |
|  | : |  |

## COMPLAINT

## I.    INTRODUCTION

Plaintiff, Rachel Styczynski, brings this action against her former employers,

MarketSource, Inc. ("Defendant MarketSource") and Allegis Group ("Defendant

Allegis") (together "Defendants").  When Defendants became aware that Plaintiff was

subjected to sexually harassing conduct by her male supervisor, they conducted an

investigation and confirmed Plaintiff's allegations.  Despite that, Defendants did not

inform Plaintiff whether they took *any* action against her sexual harasser; Defendants told

Plaintiff that they wanted her to continue to report to her sexual harasser; and, Defendants

continued to require Plaintiff to attend meetings and conferences in which her sexual

harasser participated. Defendants ignored Plaintiff's begging them, repeatedly, to take her out of situations in which she would be forced to interact with her sexual harasser, even after she was eventually medically diagnosed with severe depression and anxiety as a result of the discriminatory and retaliatory treatment to which Defendants were subjecting her. Defendants continued to subject Plaintiff to discriminatory and retaliatory conduct to the point where she was forced to resign her position.

Defendants discriminated against Plaintiff based on her sex, and retaliated against her based on her complaints about the same, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"). Defendants also discriminated against Plaintiff based on her disability, and retaliated against her based on her requesting accommodations related to the same, in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §12101, *et seq.* ("ADA") and the PHRA. Defendants also discriminated against Plaintiff pursuant to the Family Medical Leave Act, as amended, 29 U.S.C. §2601, *et seq.* ("FMLA").

## II.    PARTIES

1.     Plaintiff, Rachel Styczynski, is an individual and a citizen of the Commonwealth of Pennsylvania.

2.     Plaintiff is female.

3.     Plaintiff was employed with Defendant for approximately nineteen (19) years. At all times material hereto, Plaintiff was employed for at least twelve hundred and fifty (1,250) hours of service during the twelve (12) month period prior to the start of his FMLA leave.

4. At all times material hereto, Plaintiff worked out of her home in Quarkertown, PA 18951.

5. Defendant MarketSource is a Delaware corporation with a principal place of business at 11700 Great Oaks Way, Suite 500, Alpharetta, GA 30022.

6. Defendant Allegis is a Delaware corporation with a principal place of business at 7301 Parkway Drive, Hanover, MD 21076.

7. All Defendants are engaged in an industry affecting interstate commerce and regularly do business in the Commonwealth of Pennsylvania.

8. In or around 2004, Defendant Allegis acquired Defendant MarketSource, at which time Defendant MarketSource become a wholly owned subsidiary of Defendant Allegis.

9. The website for Defendant MarketSource says Defendant MarketSource is "An Allegis Group Company."

10. The website for Defendant Allegis states that it "is the largest privately-held talent management firm in the world" and that Defendant MarketSource provides outsourced sales and marketing solutions.

11. Defendant MarketSource's website states that its President since 2009 was appointed President of another of Defendant Allegis' subsidiaries in 2012 "which forged a symbiotic relationship between MarketSource and the global talent solutions leader."

12. At all times material hereto, Defendants employed more than fifteen (15) employees.

13. At all times material hereto, Defendants acted by and through their authorized agents, servants, workmen, and/or employees acting within the course and

3

scope of their employment with Defendants and in furtherance of Defendants' business.

14. At all times material hereto, Defendants employed more than fifty (50) employees within seventy five (75) miles of Plaintiff's workplace.

15. At all times material hereto, Defendants acted as employers within the meaning of the statutes which form the basis of this matter.

16. At all times material hereto, Plaintiff was an employee of Defendants within the meaning of the statutes which form the basis of this matter.

III. **JURISDICTION AND VENUE**

17. The causes of action which form the basis of this matter arise under Title VII, the ADA, the FMLA, and the PHRA.

18. The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331.

19. The District Court has jurisdiction over Count II (ADA) pursuant to 42 U.S.C. §12117(a) and 28 U.S.C. §1331.

20. The District Court has jurisdiction over Count III (FMLA) pursuant to 29 U.S.C. §2617(a)(2) and 28 U.S.C. §1331.

21. The District Court has supplemental jurisdiction over Count IV (PHRA) pursuant to 28 U.S.C. §1367.

22. Venue is proper in the District Court under 28 U.S.C. §1391(b) and 42 U.S.C. §2000(e)-5(f).

23. On or about February 3, 2017, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") regarding the discriminatory and harassing conduct to which she was being subjected. This Charge

was cross-filed with the Pennsylvania Human Relations Commission ("PHRC") Attached hereto, incorporated herein and marked as Exhibit "1" is a true and correct copy of the February 3, 2017 EEOC Charge (with personal identifying information redacted).

24. On or about April 17, 2017, Plaintiff filed a Second Charge with the EEOC regarding the continued discriminatory, and retaliatory, conduct to which she was being subjected. This Charge was cross-filed with the PHRC. Attached hereto, incorporated herein and marked as Exhibit "2" is a true and correct copy of the April 17, 2017 EEOC Charge (with personal identifying information redacted).

25. On or about June 30, 2017, Plaintiff filed a Fourth Charge with the EEOC regarding the continued discriminatory, and retaliatory, conduct to which she was being subjected. This Charge was cross-filed with the PHRC. Attached hereto, incorporated herein and marked as Exhibit "3" is a true and correct copy of the June 30, 2017 EEOC Charge (with personal identifying information redacted).

26. On or about March 29, 2018, the EEOC issued to Plaintiff a Notice of Right to Sue for her Charges of Discrimination. Attached hereto, incorporated herein and marked as Exhibit "4" is a true and correct copy of the notice (with personal identifying information redacted).

27. Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV. FACTUAL ALLEGATIONS

28. In around January 2014, Plaintiff became employed by Defendants as a part-time Sales Associate. Over the next two (2) years, she was promoted due to her consistently excellent performance, first to Sales Manager, and then to Electronics and

Entertainment Lead.

29.    At all times material hereto, Plaintiff performed her job duties in a highly competent manner.

30.    In around January 2016, Plaintiff's supervisor vacated his District Manager ("DM") position, and George Syrellis (male), Regional Manager ("RM") for Eastern Pennsylvania, New Jersey, and parts of New York, interviewed Plaintiff for the open position.

31.    During the interview, Syrellis asked Plaintiff when she first realized that she was a lesbian.

32.    As Plaintiff felt that she had no choice but to answer Syrellis' interview question, she told him that, due to her childhood history and issues with her father, she was more comfortable being in relationships with women.

33.    Syrellis' response was to ask Plaintiff if she ever got "help for that."

34.    Syrellis also told Plaintiff that Defendants had a history of making hiring and promotion decisions based on characteristics such as sex, race, and ethnicity.

35.    In around March 2016, Defendants informed Plaintiff that she had been selected for the DM position reporting to Syrellis. In Plaintiff's new position, she was responsible for managing the Northeast Pennsylvania territory.

36.    In around October 2016, while Plaintiff was speaking to colleagues at a work conference in Dallas, TX, she felt something smack her backside. When she turned around, Syrellis was standing behind her, laughing, and said, "it was only my clipboard."

37.    At another point during the conference, Syrellis approached Plaintiff while she was speaking to a (male) colleague and said to Plaintiff's colleague whether he

aspired to be mediocre. When the colleague said no, Syrelli said, while looking straight at Plaintiff, "then start hanging out with other people."

38.     Plaintiff complained about Syrellis' conduct, including his smacking her backside, to supervisory-level employees while at the conference.

39.     On or about October 21, 2016, Anita Cohen, Employee Relations Manager, contacted Plaintiff and said that she had learned of Syrellis' inappropriate conduct and that Defendants were investigating the same.

40.     In around November 2016, and while Defendants' investigation into Plaintiff's complaints regarding Syrellis' inappropriate conduct was ongoing, Syrellis called Plaintif to tell her that he wanted to have dinner with her because he did not want to eat alone. As Plaintiff was fearful of being alone with Syrellis due to his sexually harassing conduct, she visited one of her stores that required a long commute so that she would be unavailable to meet with him.

41.     In around mid-November, Defendants informed Plaintiff that their investigation into Syrellis' conduct was closed, and that her allegations were substantiated.

42.     As Defendants admitted in the Position Statement that they submitted to the EEOC, they concluded that Syrellis "engaged in an inappropriate discussion" during Plaintiff's interview "to include questions and comments relative to [Plaintiff]'s sexual orientation, religion, marital status, and children."

43.     Defendants also admitted in their EEOC Position Statement that they concluded that Syrellis did smack Plaintiff on the backside.

44.     When Plaintiff told Cohen about Syrellis wanting to have dinner with her,

Cohen said that she was going to try to have the investigation re-opened.

45.  No one from Defendants advised Plaintiff as to whether they were investigating Syrellis' conduct any further. No one from Defendants advised Plaintiff as to whether Syrellis had been subject to any disciplinary action as a result of his confirmed sexually harassing conduct against Plaintiff.

46.  Shortly after Defendants advised Plaintiff that they had closed the investigation, Plaintiff asked Jennifer Mulhall, Executive Director of Human Resources, whether she was going to have to continue reporting to a man whom Defendants had confirmed had sexually harassed her.

47.  Mulhall told Plaintiff that she would have to continue reporting to Syrellis, that she knew that it was a "big ask of us, but that Defendants wanted her to "rise above" the situation.

48.  When Plaintiff told Mulhall that Syrellis had wanted to have dinner with her, and that she was uncomfortable continuing to report to him, Mulhall said that, as all of Plaintiff's meetings with Syrellis were in public, she was "safe." Plaintiff reminded Mulhall that Syrellis had engaged in sexually harassing conduct towards her in public. Plaintiff also asked how Defendants would protect her from retaliation for complaining about sexual harassment.

49.  Mulhall's only response to Plaintiff was that she understood and that Defendants wanted her to "rise above" the situation.

50.  Approximately one week later, Paul Jones (male), Regional Director and Syrellis' direct supervisor, informed Plaintiff that she would be reporting to him going forward.

51.     Despite Plaintiff's reporting directly to Jones, she still was forced to interact with Syrellis, including on conference calls and in meetings in which she was required to participate.

52.     Defendants copied Syrellis on emails that Plaintiff received regarding her work and the stores that she managed.

53.     Syrellis, through one of his direct reports, relayed instructions to Plaintiff as to how he wanted certain issues handled in the stores that had been under his supervision and which Plaintiff now managed.

54.     Up through around April 2017, Syrellis continued to have responsibility for approving Plaintiff's timecards.

55.     In or around April 2017, Defendants removed certain of Plaintiff's high-performing stores from her area of responsibility, and assigned her to manage certain stores that had been under Syrellis' supervision and that had serious performance problems.

56.     In or around Plaintiff was assigned to report directly to Jason Bare, Regional Manager.  Bare reported directly to Jones.

57.     As a result of Defendants' continued discriminatory and retaliatory conduct, Plaintiff was diagnosed with Major Depression Disorder with Anxiety brought on by Post-Traumatic Stress Disorder.

58.     Plaintiff advised Defendants of her diagnosis and that, as a result of the same, she would need to take medical leave.

59.     As a result of Plaintiff's medical condition, she was out of work on approved leave pursuant to the Family Medical Leave Act ("FMLA") from on or about

May 12, 2017 through on or about June 5, 2017.

60. On the day of Plaintiff's return from FMLA leave, Defendants scheduled her to participate in two (2) separate conference calls in which Syrellis was also participating, despite the fact that she had previously said that any contact with Syrellis was extremely distressing due to his prior conduct.

61. On or about June 14, 2017, Plaintiff submitted to Defendants a note from her doctor which stated that Plaintiff was being treated for which stated as follows:

> Rachel Styczynski is currently under my care. Patient was seen in our office for an evaluation. Ms. Styczynski is being treated for Major Depression Disorder with Anxiety brought on by PTSD stemming from workplace sexual harassment at the hands of fellow employee, George Syrellis. It is medically necessary that Ms. Styczynski have no contact whatsoever with Mr. Syrellis from this day forward. Failure to comply with this medical order will result in a signficant worsening of the acute condition for which Ms. Styczynski is presently being treated for.

62. Later that same day, Mulhall contacted Plaintiff and asked Plaintiff what she thought that Defendants were supposed to do about her request for an accommodation regarding her medical condition given that her group held regional meetings of which both she and Syrellis were a part.

63. Plaintiff told Mulhall that she had just returned to work from medical leave, that she was trying to focus on her work and do her job and that, on her very first day back from medical leave, Defendants scheduled her for two conference calls in which Syrellis was involved, which was very upsetting to her.

64. Mulhall's response was that Plaintiff needed to come up with accommodation as to the regional meetings that both she and Syrellis attended. Mulhall also told Plaintiff that she was required to attend conference calls in which both she and Syrellis participated.

65.     Mulhall's dismissive comments to Plaintiff, and confirmation that Defendants were refusing to grant her accommodation, was extremely upsetting to Plaintiff. Plaintiff began crying on the call to the point that she was unable to talk.

66.     Plaintiff then emailed Mulhall that she understood from their discussion that Defendants were refusing to grant her request for an accommodation regarding her medical condition. Despite Plaintiff's obvious distress, medical diagnosis, and her doctor's request for an accommodation on her behalf, Defendants did not respond any further to Plaintiff's request for an accommodation at that time.

67.     Plaintiff continued, per Mulhall's instructions, to participate in conference calls and meetings which Defendants scheduled and which both she and Syrellis participated.

68.     At some point thereafter, Mulhall informed Plaintiff that she did not have to attend meetings if she was uncomfortable doing so, as long as she obtained the information that was presented at the meeting. This impacted Plaintiff's work environment and her job, as, at times, she was forced to exclude herself from meetings which she wanted to attend and which would help her do her job, and in which the rest of her group participated. To the best of Plaintiff's knowledge, Syrellis continued to participate in group meetings and conference calls.

69.     In or around late summer/early fall of 2017, Plaintiff learned that Jones made disparaging and hostile comments about her, including the following:

(a)     That the situation with Syrellis and Plaintiff involving Syrellis' sexual harassing conduct was blown out of proportion;

(b)     That there was no way that Syrellis had sexually harassed Plaintiff;

(c)     That Plaintiff was "just chasing a pay day";

(d)     That he was so confident that Plaintiff had made up her claims that he could "probably smack any other female DM [District Manager] like Nicci [a female manager] playfully on the ass and be okay";

(e)     That Plaintiff "was not going to dictate to us the terms of her employment"; and,

(f)     That Defendants needed to take corrective action against Plaintiff.

70.     In or around mid November, Mulhall told Plaintiff that she would be given a warning regarding her not having attended certain meetings at a work conference a few weeks earlier (of which she had advised her supervisor and which she had skipped because she was extremely distressed as it was at the same conference the prior year that Syrellis sexually harassed her).

71.     Plaintiff reminded Mulhall that she had been told previously that she could skip any meeting at which she was uncomfortable, and the reason why she had skipped certain meetings at the conference. Mulhall denied the same and demonstrated hostility towards Plaintiff, including expressing skepticism about her reason for needing to skip the meeting and being dismissive of Plaintiff's distress.

72.     According to Bare, who was also on the call with Mulhall and Plaintiff, "I couldn't understand why Jennifer [Mulhall] was unable to sense Rachel's apparent emotional distress and work to de-escalate the conversation, instead seeming to badger [Plaintiff] into an eruption."

73.     On or about November 15, 2017, Bare resigned his employment with Defendants. He said in his resignation letter that, after Jones' comments (set forth above

in Paragraph 66), "This marked the first time that I began to wonder if anyone involved in this case had any actual understanding of the seriousness of these allegations and had taken the time to consider that there may be an actual victim."

74.     Bare also stated in his letter that, "I cannot help but now see a young lady who was the clear victim of sexual harassment who has [been] abandoned by her organization and the leaders involved in the case....I simply cannot understand how an organization whose pride lies in its declared core values and its people first mantra can continue to support the constant badgering and continued emotional mistreatment of one of its own."

75.     On December 3, 2017, Plaintiff sent the following email to Defendants:

> I have been sexually harassed.  I have been retaliated against after I complained about being sexually harassed.  I can't take it anymore.  As a result of the company's treatment, I am being forced to resign my employment, effective immediately.

76.     Plaintiff's sex was a motivating and/or determinative factor in Defendants' discriminatory treatment of Plaintiff, including the hostile work environment to which Plaintiff was subjected and Plaintiff's separation of employment.

77.     Plaintiff's complaining of sex discrimination was a motivating and/or determinative factor in Defendants' retaliatory treatment of Plaintiff, including the hostile work environment to which Plaintiff was subjected and Plaintiff's separation of employment.

78.     Plaintiff was disabled, and/or had a record of a disability, and/or was regarded as being disabled, within the meaning of the ADA and the PHRA.

79.     Plaintiff's disability, including her record of disability, and Defendants' regarding her as having a disability and her request for an accommodation was a

motivating and/or determinative factor in Defendants' discriminatory and/or retaliatory treatment of Plaintiff.

80.     Defendants retaliated against Plaintiff for exercising her rights to FMLA leave.

81.     Defendants failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory and retaliatory conduct.

82.     The retaliatory actions taken against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

83.     The discriminatory and retaliatory conduct of Defendants, as alleged herein, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

84.     As a direct and proximate result of the discriminatory and retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

85.     Defendants acted with malice and/or reckless indifference to Plaintiff's protected rights.

## COUNT I - TITLE VII

86.    Plaintiff incorporates herein by reference paragraphs 1 through 85 above, as if set forth herein in their entirety.

87.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated Title VII.

88.    Said violations were done with malice and/or reckless indifference, and warrant the imposition of punitive damages.

89.    As a direct and proximate result of Defendants' violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

90.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

91.    No previous application has been made for the relief requested herein.

## COUNT II – ADA

92.    Plaintiff incorporates herein by reference paragraphs 1 through 91 above, as if set forth herein in their entirety.

93.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the ADA.

94.    Defendants acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and their conduct warrants the imposition of punitive damages.

95.     As a direct and proximate result of Defendants' violation of the ADA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

96.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

97.     No previous application has been made for the relief requested herein.

## COUNT III – FMLA

98.     Plaintiff incorporates herein by reference paragraphs 1 through 97 above, as if set forth herein in their entirety.

99.     Defendants, have retaliated against Plaintiff and violated the FMLA.

100.    As a direct and proximate result of Defendants' violation of the FMLA, Plaintiff has suffered damages and losses set forth herein and has incurred attorneys' fees and costs.

101.    Defendants acted without good faith or reasonable grounds for believing that their acts did not violate the FMLA and the imposition of liquidated damages is warranted.

102.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' violations of the FMLA unless and until the Court grants the relief requested herein.

103.    No previous application has been made for the relief requested herein.

## COUNT IV – PHRA

104.     Plaintiff incorporates herein by reference paragraphs 1 through 103 above, as if set forth herein in their entirety.

105.     Defendants, by the above improper and discriminatory and retaliatory acts, have violated the PHRA.

106.     Said violations were intentional and willful.

107.     As a direct and proximate result of Defendants' violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorney's fees and costs.

108.     Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

109.     No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)     declaring the acts and practices complained of herein to be in violation of Title VII;

(b)     declaring the acts and practices complained of herein to be in violation of the ADA;

(c)     declaring the acts and practices complained of herein to be in violation of the FMLA;

(d)      declaring the acts and practices complained of herein to be in violation of the PHRA;

(e)      enjoining and permanently restraining the violations alleged herein;

(f)      entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined;

(g)      awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(h)      awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(i)      awarding punitive damages to Plaintiff under Title VII;

(j)      awarding punitive damages to Plaintiff under the ADA;

(k)      awarding liquidated damages to Plaintiff under the FMLA;

(l)      awarding Plaintiff such other damages as are appropriate under Title VII, the ADA, the FMLA, and the PHRA;

(m)      awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorney's fees; and,

(n)     granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACCI LAW, LLC**

Dated: June 25, 2018          BY: _____

Caren N. Gurmankin (205900)
1525 Locust St., 9th Floor
Philadelphia, PA 19102
(215) 545-7676

Attorneys for Plaintiff,
Rachel Styczynski

Exhibit "1"

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | Q FEPA<br>X EEOC | |

STATE OR LOCAL AGENCY: Pennsylvania Human Relations Commission

| NAME (Indicate Mr., **Ms.**, Mrs.)<br>Rachel Styczynski | HOME TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| STREET ADDRESS ██████ | CITY, STATE AND ZIP<br>Quakertown, PA 18951 | DATE OF BIRTH ██████ |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>MarketSource, Inc. | NUMBER OF EMPLOYEES,<br>MEMBERS<br>>15 | TELEPHONE (Include Area Code)<br>(770) 674-5000 |
|---|---|---|
| STREET ADDRESS<br>**Charging Party's Work Location**<br>11 Lucky Lane<br><br>**Corporate Headquarters**<br>11700 Great Oaks Way, Suite 500 | CITY, STATE AND ZIP<br><br>Quakertown, PA 18951<br><br><br>Alpharetta, GA 30022 | COUNTY<br><br>Bucks<br><br><br>Fulton |

*RECEIVED 17 FEB -3 PM 4: 38 EEOC PHILADELPHIA DISTRICT OFFICE*

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>Q Race  QColor  **X** Sex  QReligion  QNational Origin<br>Q Retaliation  Q Age  Q Disability  Q Other *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br><br>*Earliest*          *Latest*<br><br>x Continuing violation |
|---|---|

## The Particulars Are:

A.    1.    Relevant Work History

I was hired by Respondents in or about January 2014 as a part-time Sales Associate. Over the course of the next two (2) years, I was promoted twice, first to Sales Manager, and then to Electronics and Entertainment Lead. As of January 2016, I reported directly to Osvaldo Lara (male), District Manager ("DM"). Mr. Lara reported to George Syrellis (male), Regional Manager. Mr. Syrellis oversees a region that includes Eastern Pennsylvania, New Jersey, and parts of New York. Mr. Syrellis reports to Paul Jones (male), Regional Director, who reports to Andy Summers (male), Director of Operations.

I have consistently demonstrated excellent performance and dedication to Respondents.

| **X** I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements)<br><br>I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
|---|---|
| I declare under penalty or perjury that the foregoing is true and correct.<br><br>2/3/17     *Rachel Styczynski*<br>Date:        Charging Party *(Signature)* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day Month, and year) |

ADDITIONAL RESPONDENT

Allegis Group
7301 Parkway Drive
Hanover, MD 21076
(800) 927-8090

2.    Harm Summary

I have been discriminated against because of my sex, including being sexually harassed. Evidence of the same includes, but is not limited to, the following:

(a)    In or around January 2016, Mr. Lara told me that he was transferring to a DM position in a different region, vacating his DM position in Mr. Syrellis' region. Mr. Lara recommended me to fill his position. In or about late February 2016, I met with Mr. Syrellis for an interview regarding the DM position;

(b)    The interview with Mr. Syrellis lasted approximately three (3) hours. During the interview, Mr. Syrellis asked me when I first realized that I was a lesbian;

(c)    I felt as though I had no choice but to respond to Mr. Syrellis' question. I told him that I have always been someone who could love anyone, and that, given my childhood history, I was more comfortable being in relationships with women;

(d)    Mr. Syrellis asked me if I ever got "help for that." I do not know whether Mr. Syrellis was asking whether I got "help" regarding my being a lesbian, or for my childhood history which I had referenced;

(e)    Mr. Syrellis then told me that Respondent MarketSource, Inc. had a history of not hiring or promoting individuals based on characteristics such as sex, race, or ethnicity;

(f)    In or about early March 2016, Respondents informed me that I was selected for promotion into Mr. Lara's DM position, supporting territory in Northeast Pennsylvania, and reporting to Mr. Syrellis;

(g)    In or about October 2016, I was at a conference in Dallas, Texas with other DMs and Regional Managers, including Mr. Syrellis. At one (1) point, I was talking to some of my colleagues when someone smacked my backside. When I turned around, Mr. Syrellis was standing behind me, laughing, and he said, "it was only my clipboard";

(h)    During another conversation with my colleagues at the conference, Mr. Syrellis approached us and said to the one (1) male in the group, "do you aspire to be mediocre?" When the employee said no, Mr. Syrellis said to him while looking straight at me, "then start hanging out with other people";

(i)    I complained to supervisory-level employees regarding Mr. Syrellis' inappropriate conduct towards me, including his comments during the interview and his conduct at the conference;

(j)    On or about October 21, 2016, I got a call from Anita Cohen, Employee Relations Manager. Ms. Cohen said that someone reported my complaints about Mr. Syrellis, and that she was investigating the same;

(k)    On or about October 24, 2016, I sent Ms. Cohen an email detailing Mr. Syrellis' inappropriate and harassing conduct, including his questions and comments to me during the interview, and his conduct at the Dallas conference;

(l)    In or around mid-November, Mr. Syrellis called me to tell me that he wanted to have dinner with me because he did not want to eat alone. I was very uncomfortable being alone with Mr. Syrellis, and I was afraid to tell him no. I visited one (1) of the stores in the far reaches of my district that required a long commute so that I could avoid having to have dinner with Mr. Syrellis;

(m)   In response to my repeated requests for an update regarding Respondents' investigation, on or about November 15, 2016, Ms. Cohen informed me that the investigation was closed;

(n)    When I asked Ms. Cohen the results of the investigation, including whether this was a "he said/she said" issue, she said that it was not, and that my allegations regarding Mr. Syrellis' conduct had been "substantiated;"

(o)    I also complained to Ms. Cohen about Mr. Syrellis asking me to have dinner because he did not want to eat alone. Ms. Cohen told me that she was going to push to have the investigation into Mr. Syrellis' inappropriate conduct reopened;

(p)    I asked Ms. Cohen whether I had to continue to report to a man whom Respondents had confirmed sexually harassed me. Ms. Cohen told me that my question was a good one, and that she would look into that issue and get back to me;

(q)    In or around late November, Jennifer Mulhall, Executive Director of Human Resources, called me. I asked her the same question that I asked Ms. Cohen, whether Respondents were going to have me continue to report to a man whom they confirmed sexually harassed me. Ms. Mulhall said, "yes," and that she knew that this was a "big ask of us," but that Respondents were "hoping that you will rise above" the situation;

(r)    I told Ms. Mulhall about Mr. Syrellis asking me to have dinner with him, and told her that I was very uncomfortable continuing to report to Mr. Syrellis. Ms. Mulhall told me that all of my meetings with Mr. Syrellis were in public and that, as such, I would be "safe." I told Ms. Mulhall that, as Respondents were aware, Mr. Syrellis' sexually harassing conduct towards me was in public, and that that did not stop him. I also asked Ms. Mulhall how Respondents could protect me from retaliation, if they did not protect me from sexual harassment;

(s)    Ms. Mulhall's response was only that she understood, and, again, that she knew that it was a "big ask," but that Respondents were "hoping that you will rise above" the situation;

(t)    On or about December 2, 2016, Mr. Jones called me and said that I would be reporting directly to him going forward;

(u)    I have had to remove myself from Respondents' online discussion groups in which my colleagues are involved because Mr. Syrellis participates in the same and interacting with him makes me extremely uncomfortable; and,

(v)    Up until the end of January 2017, both Mr. Syrellis and I were still included on the same emails and meeting invitations regarding our region.

B.    1.    Respondents' Stated Reasons

       (a)    Respondents have not offered any explanation for the hostile work environment based on my sex to which I have been subjected; and,

       (b)    Respondents have not offered any explanation for failing to take appropriate corrective and/or remedial action regarding my complaints of discrimination.

C.    1.    Statutes and Basis for Allegations

       I believe that Respondents have discriminated against me and subjected me to a hostile work environment based on my sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e), *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"), as set forth herein.

## INFORMATION FOR COMPLAINANTS & ELECTION OPTION
## TO DUAL FILE WITH THE
## PENNSYLVANIA HUMAN RELATIONS COMMISSION

### Rachel Styczynski v. MarketSource, Inc. et al.

RECEIVED
17 FEB -3 PM 4:38
EEOC PHILADELPHIA
DISTRICT OFFICE

EEOC No. _____

You have the right to file this charge of discrimination with the Pennsylvania Human Relations Commission (PHRC) under the Pennsylvania Human Relations Act. Filing your charge with PHRC protects your state rights, especially since there may be circumstances in which state and federal laws and procedures vary in a manner which would affect the outcome of your case.

Complaints filed with the PHRC must be filed within 180 days of the act(s) which you believe are unlawful discrimination. If PHRC determines that your PHRC complaint is untimely, it will be dismissed.

If you want your charge filed with the PHRC, including this form as part of your EEOC charge, with your signature under the verification below, will constitute filing with the PHRC. You have chosen EEOC to investigate your complaint, so PHRC will not investigate it and, in most cases, will accept EEOC's finding. If you disagree with PHRC's adoption of EEOC's finding, you will have the chance to file a request for preliminary hearing with PHRC.

Since you have chosen to file your charge first with EEOC, making it the primary investigatory agency, the Respondent will not be required to file an answer with PHRC, and no other action with PHRC is required by either party, unless/until otherwise notified by PHRC.

If your case is still pending with PHRC after one year from filing with PHRC, you have the right to file your complaint in state court. PHRC will inform you of these rights and obligations at that time.
### [Sign and date appropriate request below]

__X__ I want my charge filed with PHRC. I hereby incorporate this form and the verification below into the attached EEOC complaint form and file it as my PHRC complaint. I request EEOC to transmit it to PHRC.

__X__ *I understand that false statements in this complaint are made subject to the penalties of 18 Pa.C.S. §4904, relating to unsworn falsification to authorities.*

X _Rachel_____ 2/3/17
Signature and Date

_____ I do not want my charge dual filed with PHRC

_____
Signature and Date

Exhibit "2"

| SECOND CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | Q FEPA<br>X EEOC | |

| STATE OR LOCAL AGENCY: Pennsylvania Human Relations Commission | | |
|---|---|---|
| NAME (Indicate Mr., Ms., Mrs.)<br>Rachel Styczynski | HOME TELEPHONE NUMBER *(Include Area Code)* | |
| STREET ADDRESS ▆ | CITY, STATE AND ZIP<br>Quakertown, PA 18951 | DATE OF BIRTH ▆ |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>MarketSource, Inc. | NUMBER OF EMPLOYEES, MEMBERS<br>>15 | TELEPHONE (Include Area Code)<br>(770) 674-5000 |
|---|---|---|
| STREET ADDRESS<br>**Charging Party's Work Location**<br>11 Lucky Lane<br><br>**Corporate Headquarters**<br>11700 Great Oaks Way, Suite 500 | CITY, STATE AND ZIP<br><br>Quakertown, PA 18951<br><br><br>Alpharetta, GA 30022 | COUNTY<br><br>Bucks<br><br><br><br>Fulton |

RECEIVED 17 APR 17 PM 2: 23 EEOC PHILADELPHIA DISTRICT OFFICE

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>Q Race  QColor  **X Sex**  QReligion  QNational Origin<br>**X** Retaliation  Q Age  Q Disability  Q Other *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br>*Earliest*          *Latest*<br>x Continuing violation |
|---|---|

### The Particulars Are:

A.  1.  Relevant Work History

I was hired by Respondents in or about January 2014 as a part-time Sales Associate. Over the course of the next two (2) years, I was promoted twice, first to Sales Manager, and then to Electronics and Entertainment Lead. As of January 2016, I reported directly to Osvaldo Lara (male), District Manager ("DM"). Mr. Lara reported to George Syrellis (male), Regional Manager. Mr. Syrellis oversees a region that includes Eastern Pennsylvania, New Jersey, and parts of New York. Mr. Syrellis reports to Paul Jones (male), Regional Director, who reports to Andy Summers (male), Director of Operations. I reported to Mr. Syrellis from in or about March 2016 through December 2016. I started reporting to Mr. Jones in or about early December 2016.

I have consistently demonstrated excellent performance and dedication to Respondents.

| **X** I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements)<br>I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
|---|---|
| I declare under penalty or perjury that the foregoing is true and correct.<br><br>Date:  4/14/2017  Charging Party *(Signature)* | SIGNATURE OF COMPLAINANT<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day Month, and year) |

ADDITIONAL RESPONDENT

Allegis Group
7301 Parkway Drive
Hanover, MD 21076
(800) 927-8090

On or about February 3, 2017, I filed a Charge of Discrimination with the EEOC regarding the sex discriminatory conduct to which I was being subjected, including Mr. Syrellis sexually harassing me (a copy of the Charge was sent to Respondents on that same day).

2.  Harm Summary

    Respondents have continued to discriminate against me because of my sex, and have, and continue to, retaliate against me based on my complaints about the same. Evidence of Respondents' continued discriminatory, and retaliatory, conduct includes, but is not limited to, the following:

    (a)  In or about early April 2017, certain of my highest-performing stores were removed from my responsibility and assigned to other employees in my group. I was reassigned to manage stores that had been under Mr. Syrellis' supervision and that had serious problems, including significant staffing deficiencies and loss prevention issues;

    (b)  Despite Respondents investigating my allegations of Mr. Syrellis' sexual harassment towards me, and confirming the same, as set forth in detail in my initial Charge of Discrimination, and despite Respondents eventually changing my official reporting structure so that I no longer reported directly to him, he continues to retain oversight over my work and he is still involved in communications regarding my work, which is very upsetting to me. The same includes:

        1.  Up until early April 2017, Mr. Syrellis continued to be the manager who was responsible for approving my weekly timecards;

        2.  Mr. Syrellis has been copied on emails to me regarding my work and the stores that I manage;

        3.  One (1) of Mr. Syrellis' direct reports relays to me instructions that Mr. Syrellis wants me to follow regarding the stores that were under his supervision and are now under my management; and,

        4.  Mr. Syrellis joins conference calls on which I am a participant.

B.  1.  Respondents' Stated Reasons

    (a)  Respondents have not offered any explanation for the hostile work environment based on my sex to which I have been subjected;

    (b)  Respondents have not offered any explanation for failing to take appropriate corrective and/or remedial action regarding my complaints of discrimination; and,

    (c)  Respondents have not offered any explanation for retaliating against me based on my complaints of sex discrimination.

C.  1.  Statutes and Basis for Allegations

    I believe that Respondents have, and continue to, discriminate against me and subject me to a hostile work environment based on my sex, and have, and continue to, retaliate against me based on my complaints regarding the same, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e), *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"), as set forth herein.

INFORMATION FOR COMPLAINANTS & ELECTION OPTION
TO DUAL FILE WITH THE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

**Rachel Styczynski v. MarketSource, Inc. et al.**

RECEIVED
17 APR 17 PM 3:23
EEOC PHILADELPHIA
DISTRICT OFFICE

EEOC No. _____

You have the right to file this charge of discrimination with the Pennsylvania Human Relations Commission (PHRC) under the Pennsylvania Human Relations Act. Filing your charge with PHRC protects your state rights, especially since there may be circumstances in which state and federal laws and procedures vary in a manner which would affect the outcome of your case.

Complaints filed with the PHRC must be filed within 180 days of the act(s) which you believe are unlawful discrimination. If PHRC determines that your PHRC complaint is untimely, it will be dismissed.

If you want your charge filed with the PHRC, including this form as part of your EEOC charge, with your signature under the verification below, will constitute filing with the PHRC. You have chosen EEOC to investigate your complaint, so PHRC will not investigate it and, in most cases, will accept EEOC's finding. If you disagree with PHRC's adoption of EEOC's finding, you will have the chance to file a request for preliminary hearing with PHRC.

Since you have chosen to file your charge first with EEOC, making it the primary investigatory agency, the Respondent will not be required to file an answer with PHRC, and no other action with PHRC is required by either party, unless/until otherwise notified by PHRC.

If your case is still pending with PHRC after one year from filing with PHRC, you have the right to file your complaint in state court. PHRC will inform you of these rights and obligations at that time.

**[Sign and date appropriate request below]**

__X__ I want my charge filed with PHRC. I hereby incorporate this form and the verification below into the attached EEOC complaint form and file it as my PHRC complaint. I request EEOC to transmit it to PHRC.

__X__ *I understand that false statements in this complaint are made subject to the penalties of 18 Pa.C.S. §4904, relating to unsworn falsification to authorities.*

                          4/14/2017
              X     _____
                    Signature and Date

_____ I do not want my charge dual filed with PHRC

                    _____
                    Signature and Date

Exhibit "3"

<table>
<tr><td colspan="2"><b>FOURTH CHARGE OF DISCRIMINATION</b><br><br>This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form.</td><td>AGENCY<br>Q   FEPA<br><b>X</b>   EEOC</td><td>CHARGE NUMBER</td></tr>
</table>

| STATE OR LOCAL AGENCY:   Pennsylvania Human Relations Commission | | |
|---|---|---|

| NAME (Indicate Mr., **Ms.**, Mrs.)<br>**Rachel Styczynski** | HOME TELEPHONE NUMBER *(Include Area Code)* ▮ |
|---|---|

| STREET ADDRESS ▮ | CITY, STATE AND ZIP<br>Quakertown, PA 18951 | DATE OF BIRTH ▮ |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>**MarketSource, Inc.** | NUMBER OF EMPLOYEES,<br>MEMBERS<br>>15 | TELEPHONE (Include Area Code)<br>(770) 674-5000 |
|---|---|---|

| STREET ADDRESS<br>**Charging Party's Work Location**<br>11 Lucky Lane<br><br>**Corporate Headquarters**<br>11700 Great Oaks Way, Suite 500 | CITY, STATE AND ZIP<br><br>Quakertown, PA 18951<br><br><br>Alpharetta, GA 30022 | COUNTY<br><br>Bucks<br><br><br>Fulton |
|---|---|---|

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>Q Race   QColor   **X Sex**   QReligion   QNational Origin<br>**X** Retaliation   Q Age   **X Disability**   Q Other *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br><br>*Earliest*        *Latest*<br><br>x Continuing violation |
|---|---|

**The Particulars Are:**

A.     1.      Relevant Work History

I was hired by Respondents in or about January 2014 as a part-time Sales Associate. Over the course of the next two (2) years, I was promoted twice, first to Sales Manager, and then to Electronics and Entertainment Lead. As of January 2016, I reported directly to Osvaldo Lara (male), District Manager ("DM"). Mr. Lara reported to George Syrellis (male), Regional Manager. Mr. Syrellis oversees a region that includes Eastern Pennyslvania, New Jersey, and parts of New York. Mr. Syrellis reports to Paul Jones (male), Regional Director, who reports to Andy Summers (male), Director of Operations. I reported to Mr. Syrellis from in or about March 2016 through December 2016. After Respondents investigated my allegations that Mr. Syrellis sexually harassed me and confirmed the same, they eventually changed my reporting structure, in around early December 2016, so that I started reporting to Mr. Jones at that time. In or about February 2017, I started reporting to Jason Bare, Regional Manager. Mr. Bare reports directly to Mr. Jones.

I have consistently demonstrated excellent performance and dedication to Respondents.

| **X** I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements)<br><br>I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
|---|---|
| I declare under penalty or perjury that the foregoing is true and correct. | |
| 6/29/2017<br><br>Date:      Charging Party *(Signature)* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day Month, and year) |

ADDITIONAL RESPONDENT

Allegis Group
7301 Parkway Drive
Hanover, MD 21076
(800) 927-8090

17 JUN 30 PH 1:03

On or about February 3, 2017, I filed a Charge of Discrimination with the EEOC regarding the sex discriminatory conduct to which I was being subjected, including Mr. Syrellis sexually harassing me (a copy of the Charge was sent to Respondents on that same day).

On or about April 17, 2017, I filed a Second Charge of Discrimination with the EEOC regarding the continued sex discriminatory and retaliatory conduct to which I was being subjected (a copy of the Charge was sent to Respondents on that same day).

On or about June 6, 2017, I filed a Third Charge of Discrimination with the EEOC regarding the continued sex discriminatory and retaliatory conduct to which I was being subjected (a copy of the Charge was sent to Respondents on that same day).

2.      Harm Summary

Respondents have continued to discriminate against me because of my sex, and have, and continue to, retaliate against me based on my complaints about the same. Respondents have also discriminated against me based on my disability. Evidence of Respondents' continued discriminatory and retaliatory conduct includes, but is not limited to, the following:

(a)     On or about June 14, 2017, I sent Respondents a note from my doctor requesting an accommodation for my medical condition. My doctor's note stated that I am being treated for Major Depression Disorder with Anxiety brought on my PTSD stemming from the sexual harassment to which Mr. Syrellis had subjected me. My doctor stated that it was "medically necessary" that I have "no contact whatsoever" with Mr. Syrellis going forward," and that "[f]ailure to comply with this medical order will result in a significant worsening of the acute condition for which" I am being treated;

(b)     Later that same day, Jennifer Mulhall, Human Resources, contacted me. She asked me what I thought Respondents were supposed to do about my request for an accommodation regarding my medical condition as far as my group's regional meetings (which both Mr. Syrellis and I attend). I told Ms. Mulhall that I had just returned to work from my medical leave, that I was trying to pick up the pieces and do my job, and that, on my first day back, I was scheduled for two (2) conference calls with Mr. Syrellis, which was extremely upsetting to me;

(c)     Ms. Mulhall then told me that I needed to call her back and let her know what I thought the company was supposed to do about my request for an accommodation as to the regional meetings in which both Mr. Syrellis and I are involved (despite the fact that Respondents had the note from my doctor regarding my request for an accommodation for my medical condition);

(d)     Ms. Mulhall also told me that, as far as the conference calls (in which both Mr. Syrellis and I participate) go, important information is relayed in those calls, and that I needed to participate in them;

(e)     Ms. Mulhall told me that I would have "minimal exposure" to Mr. Syrellis on those calls, and that, as such, Respondents expected me to participate in the same;

(f)     At that point, I was crying too hard to continue the conversation, and I told Ms. Mulhall that I was too upset and needed to end the call;

(g)    I subsequently emailed Respondents, including Ms. Mulhall, about our phone call, and stated my understanding from our call that Respondents were refusing to grant my request for an accommodation regarding my medical condition. I asked that Respondents let me know if my understanding was not correct;

(h)    Respondents never responded to my email, and they did not engage any further with me regarding my request for an accommodation;

(i)    Respondent has continued to schedule conference calls and meetings in which both Mr. Syrellis and I participate; and,

(j)    Respondents have not informed me of any actions that they have taken regarding my continued complaints of discriminatory and retaliatory conduct.

B.    1.    Respondents' Stated Reasons

(a)    Respondents have not offered any explanation for the discrimination, including a hostile work environment based on my sex to which I have been, and continue to be, subjected;

(b)    Respondents have not offered any explanation for the discrimination based on my disability to which I have been subjected;

(c)    Respondents have not offered any explanation for their failure to engage in the interactive process with me regarding my request for an accommodation;

(d)    Respondents have not offered any explanation for failing to take appropriate corrective and/or remedial action regarding my complaints of discrimination; and,

(e)    Respondents have not offered any explanation for retaliating against me based on my complaints of sex discrimination.

C.    1.    Statutes and Basis for Allegations

I believe that Respondents have, and continue to, discriminate against me and subject me to a hostile work environment based on my sex, and have, and continue to, retaliate against me based on my complaints regarding the same, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e), *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"), as set forth herein. Respondents have also discriminated against me based on my disability, in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §12101, *et seq.* ("ADA") and the PHRA.

INFORMATION FOR COMPLAINANTS & ELECTION OPTION
TO DUAL FILE WITH THE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

**Rachel Styczynski v. MarketSource, Inc. et al.**

EEOC No. _____

You have the right to file this charge of discrimination with the Pennsylvania Human Relations Commission (PHRC) under the Pennsylvania Human Relations Act. Filing your charge with PHRC protects your state rights, especially since there may be circumstances in which state and federal laws and procedures vary in a manner which would affect the outcome of your case.

Complaints filed with the PHRC must be filed within 180 days of the act(s) which you believe are unlawful discrimination. If PHRC determines that your PHRC complaint is untimely, it will be dismissed.

If you want your charge filed with the PHRC, including this form as part of your EEOC charge, with your signature under the verification below, will constitute filing with the PHRC. You have chosen EEOC to investigate your complaint, so PHRC will not investigate it and, in most cases, will accept EEOC's finding. If you disagree with PHRC's adoption of EEOC's finding, you will have the chance to file a request for preliminary hearing with PHRC.

Since you have chosen to file your charge first with EEOC, making it the primary investigatory agency, the Respondent will not be required to file an answer with PHRC, and no other action with PHRC is required by either party, unless/until otherwise notified by PHRC.

If your case is still pending with EEOC after one year from filing with PHRC, you have the right to file your complaint in state court. PHRC will inform you of these rights and obligations at that time.

**[Sign and date appropriate request below]**

  X  I want my charge filed with PHRC. I hereby incorporate this form and the verification below into the attached EEOC complaint form and file it as my PHRC complaint. I request EEOC to transmit it to PHRC.

  _X_  *I understand that false statements in this complaint are made subject to the penalties of 18 Pa.C.S. §4904, relating to unsworn falsification to authorities.*

                X    ~~Rachel~~ _____   6/29/2017
                          Signature and Date

____  I do not want my charge dual filed with PHRC

                          _____
                          Signature and Date

Exhibit "4"

### U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  Rachel Styczynski

Quakertown, PA 18951

From:  Philadelphia District Office
801 Market Street
Suite 1300
Philadelphia, PA 19107

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 530-2017-01436 | Legal Unit, Legal Technician | (215) 440-2828 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u>** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Jamie R Williamson*                    3/29/18

**Jamie R. Williamson,**
**District Director**

*(Date Mailed)*

Enclosures(s)

cc:   **MARKET SOURCE, INC.**
I Deandrei Drummond, Esq. (For Respondent)
Caren Gurmankin, Esq. (For Charging Party)